Senate Bill 7-3056, Meeting versus Merit System Protection Board. Mr. DelSoro, good morning to you. Good morning, Your Honor. The court may proceed. Please, Your Honor, James DelSoro, Petitioner of the Human Rights Committee. This case is for you from the field of the Merit Systems Protection Board. We know the facts. Okay, we don't need it at the present time. Tell me what we already know. Okay, so we're trying here to see whether the board below had jurisdiction. The court asked us to consider two MSPB cases the other day. And I'll speak to them, the Roosman versus the Treasury Department, and Ivey versus the Treasury Department. And both of those cases support my client's case. If you have similar situations where someone has exhaustive murder of an illustrated recognizance they're supposed to have. They made some sort of disclosure that they reasonably indicated a violation of law. In the Roosman case, Special Agent Roosman said that someone was using a credit card. In the Ivey case, I think the final thing was that the people were changing tax returns. What about one of the facts here? You say in your brief, blue and gray, that your client was asked to participate in arranging a sole source contract. I couldn't see anywhere where there was any allegation or evidence that your client was instructed to do a sole source contract. Where's the foundation of that assertion? That was undisputed, that she was placed into a sort of a set of duties. She normally was a financial advisor, but she was placed into- Yeah, but the question is, what is the evidence that her temporary boss, Ms. Clark, ordered her to write up a sole source contract? Ms. Reed said that she was directed to do this. Ms. Clark never disputed it. It was never disputed that she was asked to write a statement of work directing a contract for a sole source by a small business that- What do you mean, a sole source? The company was named? Yes, Your Honor. What was the name of the company? I don't know, Your Honor. Well, where is her allegation that she was told to draw up a contract specifically to be given to an identified company? That allegation was in her filing with the MSP- Where? I looked at it. I'm trying to find where she said that she was ordered to do a sole source contract. In my rebuttal, I'll go through the appendix and find it for you, Your Honor. But my understanding is that that had to do with a dispute with her. It was one that was a sole source, and two that it should have been a small business set aside, because there were at least two identified small businesses that were interested in this procurement. How did we know that? Who said there were two small businesses seeking this contract? Once again, this is Ms. Reed's testimony. Where? Same question, where did she testify to that? I didn't see any declaration by her. There was no live hearing here, right? We have some emails between her and Clark, and her and other people, and we have certain allegations she made in response to the show clause order. But I can't find in her allegations anything that comports with what your briefs claim that she said. In her email, she made these allegations. And it also is described in the- She doesn't say anything about a sole source contract in her emails. Yeah, I'll find it for you, Your Honor. But it also is discussed in the board's decision. The board takes it as a given that she made these allegations. I don't care what the board did. I'm trying to figure out what the evidence is. I'm trying to get you to help me to pinpoint some evidence that would support what you argue in your brief. Even so, isn't this a best or worst just an ordinary disagreement among an individual and a supervisor? Not necessarily, Your Honor. Isn't that what happens? A healthy interaction in any work environment? Well, it would be a healthy interaction, Your Honor, if the supervisor wasn't retaliating against you. And also, it's not just between an individual and a supervisor. Not even as trying to find the best way to do business for the government. What we're talking about here is that she's outside of her normal job. She could detail somewhere else. She's asked to do something. She says, I don't think this is the correct thing to do. She tells the person who told her to do it, this is not correct. And then she also tells- Weren't there other reasons for the various ways of challenging actions? Excuse me, Your Honor? Weren't there other reasons for the actions that you delivered that were challenging for her? Well, there's some assertion by the government that she was being disciplined and that these were emails because she was tardy or something. But that does not necessarily, that might have something to do with, yes, we're going to sanction you for being tardy, but that would be a writing-up, not a modification of work circumstances, because she had a telecommuting career. And she was relying on the fact that she could continue that. The fact that she was tardy did not have anything to do with whether she should continue in a telecommuting situation. Similarly, just the mere fact that her supervisor and her second line supervisor, who she also complained to, it's not just a mere disagreement. She's coming out and saying, look, I've been asked to do something improper. I don't think it's right. And then, well, she's alleging it, because when I came to find out what she attacks her, it was just a matter of what her allocations are. Was the second-line supervisor a participant in this so-called challenge or reaction? My understanding is that there's no evidence that has been developed that the second-line supervisor said to the first-line supervisor, take this out on this wreath. However, I don't think that she's tardy. The mere fact is that she complained of her chain, and that some action was taken against her. But the complaint should at least establish the fact that the disclosure was protected by her as well, correct? Yes, Your Honor. Now, the disclosure was made by the second-line supervisor? Well, it was made first to the detail supervisor, then back to her regular office, where she's still employed. She's not working there. She was on detail. Right. So she complains to the person who tells her to do the alleged bad act. She also complains to her regular office, both her first-line supervisor and then her chain. And the second-line supervisor, is that a, I think he's a deputy secretary or something like that. Let's assume for the moment that she was asked to establish a procedure which essentially would not include the small business set-aside, the provisions. Subsequently, after she complained that this would be a violation of the law, they come back and say, well, we have now saved enough time, but if we're not pursuing that, we want to get a full competitive bidding process. Is she still in disagreement with the competitive bidding process that eventually was happening? No, she was not complaining of what eventually happened. Apparently, the process went on in the proper fashion after she had complained and had the disciplinary actions. So was the disciplinary action taken before or after the complaint? The procurement proceeded in some other fashion after she complained, okay? Excuse me, was that other fashion of legal incompetence? I know of no reason to complain about the actual process that occurred. Let me direct your attention to the email that your client sent to Ms. Clark on the 29th of August, 2004. I'm sorry, from Ms. Clark to your client, August 29th, 2004. In going through all the emails, this looks like the email that you assert contains a directive from Ms. Clark, the temporary supervisor, to your client, in which she was ordered to do something illegal. But I can't find in the four paragraphs of Ms. Clark's message anything that a reasonable person would think was an order to do something illegal. Your Honor, would you like to take one of five, correct? One of three, okay. Ms. Clark's August 29th, 11.40 AM email to Ms. Reed. As far as I can figure out from all the emails, this is the smoking gun. This is where the boss tells the underling to do something illegal. But when I read it, I can't see any instruction to do something illegal. But that's what you claim, that she was ordered to do something illegal, that she blew the whistle on that order. And then her response right above that, Your Honor, is where she's complaining that there's no legal basis to set that they're all due to be able to find issues on a specific issue. But I'm asking you not what her answer was. I'm asking you, where is the order from the boss to do something illegal? In the four paragraphs of the August 29th, 11.40 AM email from Ms. Clark. Where does Ms. Clark order her to do anything that even looks mildly illegal? In fact, she ends up just saying, Clark says, I recommend, I'm reading from the last two lines. I recommend that we do a full competitive procurement. Please revisit this issue with the procurement of the office of the agency. It doesn't sound like an order to do anything. It sounds like a suggestion followed by saying, go talk to the procurement officer. That hardly is an instruction to violate a regulation. But that's what your claim is, that she was ordered to violate an SBA regulation. And she's responding to the person who's directing her, saying, we can't do this. This is improper. And there's a prior- But she wasn't ordered to do anything. She was ordered to revisit the issue with procurement. That's not an instruction to take an action. That's saying, discuss it with the people who are the experts. I guess you are referring to a statement concerning the possibility of a full competitive procurement versus the proposed preliminary small business solicitation. You're probably referring to the latter phrase. But that doesn't sound like an order to do anything. I think you're wrong. I'm on my roll, Senator Conrad. If I could review this while the other side speaks, and then I probably can speak more intelligently, too, if that would be the case. Sir, thank you. Senator, we'll hear from the Governor. Mr. Gage. State please, the court. Mr. Gage, you know we have an administrative judge's decision here that has a few glaring errors in it. The administrative judge finds as a fact, for example, that the petitioner never identified who took any hostile actions against her. But I believe it's in the record that the springtime memo from her immediate supervisor, Heinz Schering, in which the punitive or hostile or unwelcome actions were taken. So we know exactly who took the hostile actions. The person was indeed identified in a document, no less, by the petitioner. And yet we have a finding by the administrative judge saying the actor was never even identified. Plainly flattening wrongs, is it not? On that point, I agree. There is a memo in the record from a supervisor of the person's name. If you know the date, I would disagree that it's actually a personnel action. Now, the DHA also finds that the disclosures were made to the wrongdoers. But isn't it clear that the only possible potential wrongdoer here was Clark? And that the previous two levels of supervisors, Heinz Schering and Drew Chillow, were not wrongdoers, hadn't done a thing here, weren't even involved in this contract. And yet they were recipients of the disclosures that are said to be whistleblower disclosures. But isn't it clear that the administrative judge was flat wrong, just totally wrong, in saying that the disclosures were all made to the wrongdoers themselves? Two of the three recipients claimed they were not wrongdoers. Well, isn't that a plain error in the agency's decision? According to Ms. Retaliation's, she includes Heinz Schering, along with Ms. Clark, as a wrongdoer. Heinz Schering is never alleged to have said anything about small business set-asides or sole source or anything of the kind. I believe it's in her, it's on page 130 of the joint appendix. Ms. Reed, this is her response to the evaluation order that the administrative judge sent out, asking for more specifics. And Ms. Reed states, defending individuals in currency, Richard Heinz Schering and Tristan Clark. So at least those two are considered wrongdoers by person making allegations. How about the second level supervisor? Isn't that precisely the person who statically contemplates one should blow a whistle and communicate to, up the ladder, someone who wasn't? Isn't that a wrongdoer? So why couldn't that suffice as a protected communication? I agree, depending on the circumstances, the second-line supervisor may be an appropriate person to go to. In this case, Ms. Reed's actually been referred to the appropriate people by Ms. Clark. She says Ms. Reed isn't a determent. And that's- Wait a minute. The question is whether Drew Chilow was a wrongdoer or whether Drew Chilow was exactly the right person to report a problem to. But Judge Flores' question suggests that Drew Chilow was the correct person to complain to. And you're not answering that question. Well, you need to clear that. Because I think there's two things here, actually. I think you were sort of conceding at one time. I would concede that- this is what I would concede, that there's no allegation by Ms. Reed that Drew Chilow is one of the wrongdoers. That's the other two. She clearly says that Eichner and Clark are wrongdoers. But there's nothing. She hasn't addressed Drew Chilow. And I just want to hear the right person to go to. Therefore, the decision below is incorrect to the extent that it stated that the disclosure was only to wrongdoers and therefore doesn't qualify. To that extent, I would agree. Well, I said that's fatal. That's fatal to the administrative judge's decision that there's no jurisdiction here because there wasn't even an allegation of a protected disclosure. It is a protected disclosure if it was made to a proper person, Drew Chilow. It's not fatal because Ms. Reed has failed to allege that there's any wrongdoing here. In fact, she relies on the September 1, 2004 email that's in the direction of page 43. That's a different frame. She's stating that that's where she made her disclosure, but she's included that in the record. There's no evidence of wrongdoing, and there's no showing of wrongdoing there at all. Why is it there an allegation of wrongdoing that the contract had to be lent to a small business and that Clark told her, no, we're not going to do a small business set-aside contract. We're going to do an open competition. Now, I don't know if this is correct or not, but there's an allegation of an unlawful decision pushed by Clark. Well, first of all, there's no, she has not alleged that this would be a per se violation to have a full and open procurement process. Would she ever allege that in order to have a hearing on the disclosure? Well, she needs to allege that there's no violation of law or regulation. Well, I thought she did. I thought she said that it had to be a small business set-aside contract. Why is that an allegation of illegality when we know it wasn't done as a small business contract? Maybe she can't prove it, maybe it isn't true, but it's an allegation. Why doesn't that count as a sufficient allegation? Well, the problem here is the mere asking to take her allegations. That's true. The mere asking an employee to do something that she believes may violate a regulation is not in and of itself a violation of law or regulation. And so that's what we have here. Also, this is not, she's not, in this case, she's not, she's not making a disclosure to, she's making a disclosure that the supervisors are doing something wrong, but they're not even in a position to do anything involving this contract because only the contracting officers are required to do something. And she knows that. She states that in her email. She says that only the procurement can, can contract. So it doesn't make sense. The question is whether a reasonable person in the shoes of the employee receiving the directions from the higher-up who thinks that something in the nature of fraud or waste or abuse or illegality is afoot. Well, you have to convince us that no, such a reasonable person would think everything was just fine. Okay, setting aside the self-sourcing allegation, if her allegation is that it's a violation of a regulation for us to, to have an open procurement and not, and not go with the rule to small business, and if it's her allegation, she, that she's being instructed to do this by Ms. Clark and by Ms. Feinstein. The problem with that allegation is that those two individuals could not possibly violate that regulation, even though they don't have the contracting authority to do so. She knows from Frieda, Frieda's email, that only her, the only people who have that authority are contracting officers. Well, of course, but the papers are being written for the contracting officer by Clark and Reed and the team assigned to do so. So there's a risk, I would think, that the contracting officer may accept the papers as drafted by the drafters and send the contract out on that basis. So the fact that the contracting officer would have to, to acquiesce in the recommendations isn't a very convincing basis, I don't think, for saying that there was no indication of a violation of the foot here. Well, Ms. Clark, properly responds, redistributes the procurement, because those are the people who have to ignore it. And so- Yeah, but Ms. Clark also says in the very same email, because of the delays, we're not going to bother with ADA, we're going to do open procurement, but I'm going to hurt her. She's, uh, the way she says this is, I recommend that we do a full competitive procurement service. It's a recommendation- It's a recommendation, but when you read the whole email, she's saying, I'm not going to bother with ADA, I'm going to open competition because of timing concerns. She said, this is a recommendation, please revisit this issue with procurement. There's no wrongdoing here. And that's the, and that's the problem with, uh, Ms. Greer's argument. There's just simply no wrongdoing here. And she, she knew from- Yes, but, does that disqualify it from being inclusive of money? Isn't, wasn't the ADA wrong in indicating that, uh, since the actions were never taken, it was not a problem, it wasn't wrong to claim it? What's the authority for that? In fact, if someone goes to whistle and succeeds in taking the action, uh, and then is reprised against, uh, shouldn't that individual be entitled to, uh, to some, uh, some relief and not be disqualified because she succeeded? Yeah, you're correct. If there's a, the board has said, at least, uh, if the, if there's a potential violation that's both immediate and, I'm sure the other guy could, it's imminent, that could, that could satisfy the language of the statute, the point on which actually says the violation falls under the regulation. The, the board has, at least, found that, that could suffice. Now here, at least as far as the sole sourcing is, is concerned, at the time she made the disclosure, September 1st, 2004, Ms. Reed knew at that time that this wasn't going to be sole sourced because she was told in an email that, that, um, the recommendation was a full competitive procurement, satisfied, as Ms. Clark has said, so at the time she made the disclosure, she knew that there was, they weren't going to be sole sourced at this time. My question was, the question I wanted to ask you was whether, is it true that the EJ made a mistake by arresting the finding that the illegality never actually occurred? And it seemed to me, without directly answering your question, the implicit sense of your answer is, yes, it was a mistake, because it doesn't have to be a completed crime. If a person has reason to believe that a crime is being committed, the fact that in the end the crime didn't get committed doesn't take it outside the whistleblower protection act. Right? You, you are correct. Um, and so that's three big errors made by this administrative judge. But in your view, none of them, singly or in combination, require a trial on the merits, right? That's, that's correct. Why not? It, it's the reason, how, how, how detailed, how many emails do you need? How many allegations do you need? How much detail do you need before you get a trial on the merits? If this were a district court, and there's a federal pleading rules, a rule that the ANA is, federal rules of civil procedure, there'd be a trial on the merits for sure. And then, does the emeritus protection court really want to require more tactical pleading of facts than are required in a district court? Well, there needs to be some pleading of, of, of violation of law and order regulation. But it has to be non-frivolous in order for the jurisdiction law to attach. Exactly. So why isn't this a non-frivolous obligation? Because she has not, uh, actually alleged that she was, uh, forced to violate a regulation. And the, the disclosure that she says she made in this email, that certainly doesn't mean that it undermines her allegations, especially as far as self-sourcing is concerned. It doesn't support her allegation on the small business side. Look, if they're proving, if they're proving both directions to have a trial and have a merits determination, if this lead, this read is thought to be lying, fine. Then the administrative judge will find, I don't believe the witness. Therefore, I'm ruling against you. But we didn't have a trial here. We had a case thrown out with no trial at all on the basis that all the allegations and all the evidence to support it, the emails and the rest were frivolous. Well, if there had been a non-frivolous obligation with respect to the violations. What more? What, tell us specifically what more her lawyer would have to add to the allegations to get over the line from non-frivolous, from frivolous to non-frivolous. Well, this is not, this is hypothetical. It's not hypothetical at all. No, no. You're saying there's a shortfall here. I'm saying, well, show me what the shortfall is. Right, I thought you were asking what would suffice. I think what would suffice is if she said, if she stated, I was asked to write a statement of work that would only, would only, only one large company could possibly fit that statement of work. And so that violates, that's sole sourcing. That violates achieving 29 sites for the regulation. That violates the small business part of the rent. That might be sufficient. That would be specific. That sounds more non-frivolous. But that's not what happened here. I thought that's precisely what she did allege in her response to the sheriff's office board. Now, her response to the sheriff's office board, we have found one, on month 30 of the appendix, and it's, there's just, there's just nothing here that's, that's wrong. And she says, the defendant should remain aware of the disclosure because she sent him an e-mail. And it's got it, and that's all she has. And I thought she complained that she was ordered to write the scope of work in such a way as to guarantee that a particular large company, and that's how she described it, large company would necessarily get the contract. If she had alleged that, that would be much closer to the case. But there's no allegation in here that she was, was told to write a statement of work to attract a certain company. So that's what's missing here. I mean, all she says is that she's been asked to, to solicit work. It, it, there's not even that. So maybe she says that, that her disclosure, or she notified him that she would not violate the FAR. And in her initial appeal form, she says she made this disclosure in September 1st, 2014. Is the point that there was no real disclosure of information, evidence of a violation? It was just a disagreement between his people and the Chamber of Commerce? Exactly, and, and that e-mail shows that there's nothing, she's not revealing it. She can get it. There's nothing that, that's not unknown here that's being disclosed. They're just discussing two possible, there's recognition from his partner, and then Mr. Reid makes a recognition. You're, you're not suggesting that, to qualify under the Act as a, as a lowly disclosure, it has to be a secret that no one knows, are you? To be a disclosure, as this Court has, has defined it, has to reveal something that was hidden, that was not known before. And that's part of the problem with discuss, you should have this discussion with these other individuals who are aware of exactly what she's talking about. And so this isn't an everyday workplace discussion. There's a recommendation by Ms. Barton that she, Mr. Reid makes a different recommendation. And that's all there is to this, this case. There's no wrongdoing here. What was the allegation further than that, that the fact that she did not want to violate FARA, that the action that we've been requested for her to undertake would be in violation of FARA? Federal acquisition, regulation. She's suggesting in, or in her email, she suggests that to not go to the small business group would, that they ought to go to the small business group because of the regulation. And she's been told, well, revisit this with procurement. She's not being told, no, you need to do it this way because this is how we want it. We want to attract some large firm. She's never told that. She's told, revisit with this, this issue with procurement. And as Ms. Reid herself says, only the contracting officer can take this action anyway. So that's who she needs to talk to. There's just nothing here that, there's nothing to show that there's a, she's being forced to violate FARA. And now we're into repetition on top of repetition. Let's hear a rebuttal from Ms. Barton. Hello, partner. Ms. Miller has some argument. But hopefully not to repeat anything that's already been said. May it please the Court. While I'm certainly happy to answer questions about anything that's been discussed this morning, I won't, I won't repeat. I would just briefly like to touch on the board's finding that there was no non-firmness allegation that the disclosures of contributing factors will cover personality behavior. The board found that two of the actions alleged by Ms. Reid might possibly have been covered, but that the facts did not support that in this case. Ms. Reid has not challenged that, those particular findings before this Court. That is, a change in duties or the possible threat of a disarmament action. That's not disputed. To get to the two that, the only two that are disputed are the allegation that Ms. Reid has denied reasonable accommodations for her disabilities and that her telework arrangement was canceled. The board correctly found that neither of these allegations constituted a non-firmness allegation of a covered personnel action. And that finding is correct. Ms. Reid's brief simply reasserts the basic statement of law that when an acting official has authority over a whistleblower and knows of the whistleblower. Why don't you tell us about the evidence? Well, let's see, what is the evidence that makes it clear that the April personnel actions tossed over her could have been taken in retaliation? Well, as an initial matter, Ms. Reid has not pointed to any facts to demonstrate that they were taken in retaliation. Well, she's pointed to the fact that it was within eight months of various cases where retaliatory action taken within eight months was found by this court to be causally linked. That's right. So it's not too late, it's not stale, we know that from the case law. So then what is the deficiency in the causation evidence or allegations? Well, with respect, first to the allegation that Ms. Reid has denied reasonable accommodations, she did not state to the board what accommodations she had requested, who may have denied her those accommodations, or even clearly set forth what sort of disability she was alleged to have. Moreover, these are the kinds of things that would be addressed in an idiocracy. They aren't the type of covered personnel action contemplated by the statute. So what if her duties were changed, were diminished? She's alleged that her duties were changed, but the board said that- And that would be retaliation if it were causally linked to a true disclosure by an employee, right? Not based on this particular allegation on a plea. An employee, if the change in duty was caused by a true disclosure, that would afford relief under the whistleblower protection act, right? Hypothetically, yes, Your Honor. However, the facts, the change in duties alleged by Ms. Reid was that her temporary detail ended. And the board found against Ms. Reid on this particular point, and that's not been challenged before this court. Well, I thought it was definitely challenged that there was a lack of non-frivolous allegations of causation. I mean, that's the center of the whole deal. I refer the court to page 6 of the petitioner's opening brief. And she raises only the issues of the denial of reasonable accommodation and the telework, none of the other allegations. But if he's challenging the finding of the board that the allegations of causation were frivolous, he is challenging that. Well, he's only set forth specifically those two. Right. And- Just in those two, he's challenging the finding that the causation allegations he set forth were frivolous. Yes, Your Honor, reasonable accommodations and the telework, that's right. Why are they frivolous? Because they're not cover personnel actions under the statute. And Ms. Reid's not set forth any argument why they should be considered cover personnel actions. All right. Thank you. Mr. Gallardo, we have two minutes for your rebuttal. Thank you, Your Honor. As to the court's concern about whether there's some sort of direction to the filing of the parent law, I'll go back over pages 103 to 107. We'll put this in context for the court. Ms. Reid was detailed. She wasn't in her normal range of work. She is getting, she gets herself smart on the procurement issues on page 105 of the record. This is a record of an email between herself and a public slawyer by the name of Ferdiz Medrone. And Ferdiz Medrone is explaining to the ADA situation why this has to be done in this fashion. Ms. Reid is then going back to her detailed supervisor and saying, hey, we need to do this ADA because of these regulations that say that we have to do it this way. She's then told by Ms. Barr, Ms. Barr goes through the discussion. In the key version, Your Honor, I recommend that we do the full competitive procurement. That is not a statement that is as damning as to throw someone in jail. Ms. Reid's response makes it clear that she's getting, has to do something that she's afraid is going to get her in trouble because she makes reference to the last sentence on page 103 of the record in her email from September 1st. Since criminal penalties are possible for such an action, I recommend that we follow the original concurrence of these conditions. Because she's literally talking to Marie Reid emails all the time. Just to make the argument, Your Honor, is that there is something here for Ms. Reid. She has a reasonable belief that she's being asked to violate the current regulation. And she has made the allegations necessary to have a substantive hearing before the court. And the court has stated here, it's absolutely correct, to go with the most governmental requirements would be beyond what she would be required to do in a federal district court or in a state court in the land. And she should be permitted to at least have her allegations heard substantively. Thank you, Your Honor. All right, we thank you all for being here, and we'll take the meeting to a close.